Townsend, District Judge.
This is a suit in equity, brought for the infringement of letters patent No. 285,916, dated October 2, 1883, and No. 337,187, dated March 2, 1886, for improvements in trunk locks, originally granted to Frank W. Mix, and by him assigned to the complainant. The defenses as to both patents are anticipation and want of patentable invention.
The object of the invention in both patents is to make the lock serve the double purpose of locking the trunk and of preventing lateral move *981 ment of the cover, and at the same time providing a cheap, strong, and efficient lock. Lateral displacement of the trunk and cover is prevented by providing at the meeting edges of the hasp plate and lock plate a dowel pin in one and a corresponding socket in the other, in addition to the hasp and locking mechanism. Only the first and fifth claims of patent No. 285,916 are claimed to be infringed. They are as follows:
“(1) In a trunk lock, the combination of the hasp plate, the hasp hinged thereto, the spring arranged to press upon the hasp, with a constant tendency to throw it outward, the keeper plate, the dowel pin and socket, and the lock ■bolt for locking the hasp into engagement with the keeper, substantially as described.” “(5) In a trunk lock, the combination of the hasp plate, the hasp hinged to said hasp plate, the keeper plate, the lock bolt for locking the hasp into engagement with the keeper, and the dowel pin and socket at the meeting edges of said two plates, all combined substantially as described, and for the purpose specified.”
The claims in patent No. 337,187 are as follows:
“(1) In a trunk lock, a hasp plate and a lock plate, the adjacent edges of which are constructed to interlock with each other, in combination with a hasp hinged to the hasp plate, and provided on its free end with a lock, which is received in a cup or frame in the lock plate, substantially as set forth. (2) A trunk lock, consisting of a hasp plate adapted to be secured to the cover of the trunk, and a lock plate adapted to be secured to the body of the trunk, and constructed with a cup or frame for the reception of the hasp lock, the hasp plate and lock plate constructed and arranged to extend to the meeting edges of the cover and body of the trunk, and the hasp plate provided with a dowel or extension that engages in a socket or recess in the lock plate, in combination with a hasp hinged to the hasp plate a considerable distance above its lower edge, and provided on its free end with a lock, substantially as set forth.”
Each of these claims includes the following elements: (1) The hasp plate; (2) the hasp hinged thereto; (3) the keeper plate or lock plate; (4) the lock bolt or lock mechanism; (5) the dowel pin and socket, or similar means of interlocking the plates. Each claim implies that the hasp plate and keeper or lock plate shall be so applied to the trunk cover that their edges shall meet when the trunk is closed. The first claim of patent No. 285,916 has an additional,element, viz., the spring arranged to press upon the hasp with a constant tendency to throw it outward.
The defendant, in order to prove lack of patentable invention in view of the prior art, has put in evidence nine patents, viz.: The Jones patent, No. 44,869, November 1, 1864; Hitting patent, No. 62,453, February 26, 1867; Gaylord patent, No. 98,078, July 27,1869; Terry, No. 107,133, September 6, 1870; Hillebrand & Wolfe, No. 120,067, October 17, 1871; Rivers, No. 140,308, June 24, 1873; Rice, No. 188,950,. March 27, 1877; Haskell, No. 214,252, April 15, 1879; Crouch, No. 235,130, December 7, 1880. Also the exhibit, “Star lock,” which it is admitted was manufactured before complainant’s patents. Defendant also claims that the first patent in suit anticipates the second. Nearly all these patents, including the earlier ones, have the hasp plate, the hasp hinged to the hasp plate, the keeper or lock plate, and the lock *982 bolt or lock mechanism. The Uitting and Terry patents have springs arranged between the hasp and its plate, the constant tendency of which is to throw the hasp outward. The Rice patent has a spring arranged to throw and keep the hasp in constant engagement with its keeper. The Hillebrand & Wolfe patent and the Rivers patent have the edges of the hasp plate and the keeper plate arranged so as to meet, and both of them have dowels and sockets for interlocking and preventing lateral movement of the trunk cover. It is admitted that it is old to make dowels and sockets on a trunk and cover, separate from the lock, so as to prevent lateral movement. The Haskell patent is for a trunk-lock guard. This is shown in two parts closely surrounding a trunk lock, which has the hasp plate and hasp, and a cylindrical lock on the free end of the hasp. The guard is fitted with dowels and sockets .to prevent lateral displacement of the trunk and cover. The hasp plate is affixed to the trunk, and the keeper plate to the cover. The lock is not particularly described. The specification speaks of the class of locks as well known.
Defendant claims that complainant’s patent No. 285,916 contains only an accretion of well-known devices, which operate in the same manner, when combined in defendant’s structure, as they do when inserted separately, and that there is merely the substitution of one well-known device for another; thus, if in the Uitting and Terry patents the edges of the hasp plate and keeper plate were arranged so as to meet, and they were provided with dowels and sockets, as in the Hillebrand & Wolfe patent and the Rivers patent, they would embody the said first and fifth claims of complainant’s patent; so, if in the Hillebrand & Wolfe patent and the Rivers patent there were substituted hinged hasps, pressed by a spring, as in the Uitting and Terry patents, they would meet these claims. The device in the Haskell patent may be modified so as to embody the claims of the- patent No. 285,916 by casting the lock there shown and its patented guard integral, instead of in separate pieces. The Star lock, which was made prior to complainant’s patents, has a hásp plate and a hasp hinged thereto; a keeper plate or lock plate, with a socket, into which the hinged hasp with its staple fits, so that the hasp and the keeper plate present a smooth exterior surface when the trunk is locked; a lock bolt to hook and hold the hasp; two dowel pins and sockets for interlocking the plates; and a spring arranged to press upon the hasp with a constant tendency to throw it outward. The edges of the hasp plate and keeper plate meet when the trunk is closed. Complainant’s expert and complainant’s counsel claim that this differs from complainant’s invention “in the fact that the lock is not mounted upon the hasp or hasp plate, and in the fact that there is no holding protection and socket other than the staple, which takes directly into the lock proper and is engaged by the lock bolt.” These points of difference do not seem to be included in the first and fifth claims of patent No. 285,916. These are the only claims of that patent which are applicable to the construction shown in Fig. 8 and Fig. 10 of the drawings, and must be so construed as to include the structures shown in *983 those figures. Defendant’s expert admits that in the structures .shown in said figures the lock is not mounted on the hasp. In my. opinion, the Star lock anticipates the first and fifth claims of patent No. 285,916.
Both claims of patent No. 337,187 include, in addition to the five elements before mentioned, common to both patents, the lock or lock mechanism arranged on the free end of the hasp, and a cup or frame in the lock plate to receive the lock; and the second claim of patent No. 337,187 further provides that the hasp plate, with its dowel, shall be adapted to be secured to the body of the trunk, and that the hasp shall be hinged to the hasp plate at a considerable distance above its lower edge. All the elements combined in patent No. 337,187 were old and well known. No one patent appears to have all the elements arranged in just the same way. Defendant’s counsel again claims with much force that this patent also merely presents an accretion of well-known devices; that, as locks with dowels and sockets were well known, and locks with hinged hasps carrying their locking mechanism on the free end of the hasp, and having a cup in the lock plate to receive the lock, were well known, and that, as the operation of the dowel and socket were not connected with the operation of the lock mechanism, and the dowel and socket could be, and had been, placed on different parts of the trunk, there was no invention in the making of the particular lock described in the patent. The Jones patent, the Terry patent, the Haskell patent, and the Crouch patent show or imply a lock mechanism hinged to the hasp, and received in a cup or frame in the lock plate. The Crouch lock seems to have all the elements of the first claim of complainant’s patent No. 337,187, except the dowel and socket, which are found in former patents. In the Haskell patent, the guard, combined with the keeper plate, as shown in the drawings, makes a cup or socket for the lock. If a cylindrical lock on the hasp is substituted for the hasp and lock mechanism on the lock plate, and a dowel and socket added, in the Uitting patent, it will embody all the claims of the second Mix patent. Unless the lock in the second Mix patent is to be construed as necessarily cylindrical, the Terry patent, by the addition of a dowel and socket, would embody all the claims of this patent. In the Hillebrand & Wolfe patent, the substitution of a hinged hasp, spring-pressed, with a cylindrical lock on the free end, for the hingeless hasp shown in the patent, would satisfy the first claim of patent No. 337,187, and if such hasp were hung somewhat higher on the hasp plate it would satisfy the second. If the exhibit Star lock were modified by substituting a cylindrical lock on the free end of the hasp for the staple of the hasp and lock mechanism of the plate, it would embody the first claim of the patent under consideration; and, if such hasp were hinged on the hasp plate, it would embody the second. In a case like this, if any claim is to be held valid, it must be because the article produced is shown to have a special utility, and to answer the requirements of its department more fully than anything that has gone before; and the monopoly should even then be restricted as closely as may be to the improvement actually shown. The first claim of patent No. 337,187 *984 appears to be too broad tó be held valid in view of the prior art as shown in this case.
The second claim is more closely limited. The hasp plate, with the dowels, must be on the cover, and the keeper plate, with the sockets, must be on the body, of the trunk. This seems to be the most convenient form. The hasp, which the specification describes to be “spring-pressed,” and which should be so limited, is to be hinged a considerable distance above the edge of the hasp plate. The lock must be mounted upon the free end of the hasp, and must be limited to a cylindrical form. Made in this way, the lock seems to combine more advantages, and have greater utility, than any that has preceded it. The question of utility is steadily coming into greater prominence as a test of invention. Where an art has grown by successive steps, the inventor who supplies the last requisite to making a better article than his predecessors is now allowed the benefit of that last step, even though it seems to be a short one. There seems to be no doubt of the utility of this invention; at least the defendant is hardly in a position to dispute it. Defendant’s counsel claims that it is not enough that a device has grown into extensive use, but that it must also have displaced previous devices, in order to raise any presumption of the utility entitled to be considered in determining the question of patentability. This device seems to have displaced former devices in the manufactory of the defendant, at least, as well as in that of the complainant, and large numbers have been made and sold both by complainant and defendant. Complainant’s expert says, and his counsel quotes:
“The Mix invention, as embodied in the second Mix patent, consists of a complete reorganization of the Crouch type of lock, whereby it may be successfully mounted upon the trunk lid, and co-operate with the keeper upon the trunk body, and all the parts be adequately protected, and the lock-carrying hasp be spring-pressed, so as to hold it normally slightly in front of the cup. To this end he did not hinge the hasp to the extreme end of the hasp plate as in the prior Crouch and Excelsior constructions, but he carried the hinge, as the patent says, ‘a considerable distance above the lower edge,’ so that the lock case upon the free end of the hasp would extend below the valance only far enough to engage a cup plate, which was mounted so high upon the body of the trunk as to extend to the meeting edges of the cover and body of the trunk.”
He also so shaped the cup plate that it would both receive and shield the lock case and the hasp carrying the lock case.
The shaping of the cup plate or lock plate so as to receive and shield the hasp carrying the lock case, as well as the lock case itself, is put forward as an important point in complainant’s case. I think this element should be so limited. With the respective elements limited as above stated, I think that the second claim of patent No. 337,187 ought to be sustained. So far as appears from the evidence, this lock is superior to, and combines more advantages than, any which has preceded it. On the whole, it seems to me to be so far superior to the others ■which have been brought to my notice as to constitute a new and useful result, and to come within the scope of the decisions which hold that *985 the fact that the new combination of old elements produces a new and useful result is strong evidence that such combination is the product of inventive ingenuity, and not merely an aggregation of devices. The doctrine that utility should have great weight in favor of the existence of invention when the question is doubtful is fully sustained by the supreme court. Smith v. Vulcanite Co., 93 U. S. 486; Washburn & Mom Manufg Co. v. Beat ’Em All Barbed Wire Co., 143 U. S. 275, 12 Sup. Ct. Rep. 443; Gandy v. Belting Co., 143 U. S. 587, 12 Sup. Ct. Rep. 598; Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. Rep. 825. The doctrine of these cases is carefully considered and practically applied to its full.extent in Watson v. Stevens, 60 O. G. 1884, 51 Fed. Rep. 757. I do not think that the doctrine that an accretion of old devices, or the substitution of one well-known device for another, does not involve invention, applies any more strongly in the present case than in the case last cited. As in that case, the considerations on each side seem to me to be very closely balanced. The presumption arising from the fact that the patent office issued the patent is to be allowed due weight. The second claim of patent No. 337,187, limited as above stated, is sustained. Let there be a decree for an injunction and an accounting.